All right, let's take up People v. Jarvis Boose. Good afternoon. Good afternoon. Argument for the appellant. Thank you very much. May it please the Court, count. My name is Daniel Allen. I'm with the Office of the State Appellant Defender. I represent the petitioner, Mr. Boose. This is a first-stage, post-conviction claim. His petition was summarily dismissed, and we are asking that this Court reverse that dismissal and just send it to second stage so he can be appointed an attorney. Specifically, Mr. Boose alleged in his post-conviction petition what he has maintained throughout these proceedings, that the detective who interrogated him, Detective Ricky Perry, was a corrupt police officer who lied at the suppression hearing about whether he honored Boose's right to remain silent. Now, Boose, in his petition, has attached numerous newspaper articles that were not available at the motion to suppress hearing. Newly discovered evidence showing that Perry is indeed an incredible witness. He attached newspaper articles reporting that Detective Ricky Perry was caught lying in a very similar case, another murder case where he claimed to have not interrogated a murder suspect before the videotape was running. The trial judge in that case found that Perry was an incredible witness. The trial judge in that case suppressed statements, and ultimately murder charges were dismissed. Now, critically, as a result of that case, the state's attorney at St. Clair County, Robert Heda, he stated himself that Detective Ricky Perry is not an incredible witness. The state's attorney said that their office could not proceed in any case where Perry is a lead detective. The state's attorney, Robert Heda, said that they would have to review every single pending case involving Perry, and it's a case that could be in the hundreds. Accordingly, it's at least arguable, and that's the standard we're at. We only have to make an arguable claim in the law that if the judge knew then what we now know about Detective Rick Perry, that he is an incredible witness, the judge would have had to have suppressed the inculpatory statements. Again, below what the testimony of the suppression hearing was, Boos gave two videotaped statements to Perry. In the first, there's no dispute, he invoked his right to silence. He didn't say anything incriminatory. What happened in between, what happened after that first statement, has always been disputed. According to Perry, he stated that as they're walking in the hallway from the interrogation room, once the videotape stopped, Perry says that Boos spontaneously stated, I did it, I shot Daryl Britton. It was only after that, according to Perry, that they went back in the interrogation room and took a second statement. That's when Boos made some inculpatory remarks. He stated, I made a mistake. Then the judge found Perry to be credible. The judge rejected Boos' testimony that actually it was Perry who continued to badger Boos in the hallway, and that it was Perry who did not at all scrupulously honor Boos' right to silence. The newly discovered evidence that's now attached to his petition shifts the credibility away from Perry. Boos was a credible witness. I think it's pretty clear now that Detective Rick Perry is a liar. He's willing to lie at suppression hearings and murder cases in order to obtain convictions. The trial judge believed Perry then, and the inculpatory statements were admitted at trial against Boos. It's at least arguable that, again, had the trial judge been aware of Perry's history of misconduct, he would have rejected Perry's testimony and suppressed the statements. Similarly, Boos can meet the low first-stage post-conviction threshold for establishing he was prejudiced in this case. The general standard is whether it's clear beyond a reasonable doubt that a jury would have found a defendant guilty absent the improper admission of a defendant's statement. But once again, we're at only the first stage of post-conviction proceedings. The standard is even lower than that. The standard is it's only arguable that he was prejudiced by the improper admission of this statement. We can meet that standard. Boos can meet that standard. The evidence in this case wasn't strong. There was no physical evidence linking Boos to the crime. His conviction hinged on his inculpatory statements. The state repeatedly emphasized the remarks he made, and made a mistake as proof that Boos was guilty. And, of course, the remaining evidence was a couple of current witnesses who testified at trial. But all these witnesses certainly had their problems. First, the neighbor, Johnny Mae Wright, she said she saw Brittany and Boos walk in the same direction before hearing a gunshot. She never actually saw the shooting. But as this Court's aware, she was a crack cocaine addict. She was under the influence of crack cocaine on the night of the shooting. So her testimony must be considered with some skepticism. Two other witnesses testified, current witnesses, Demario Williams and Deontay Rice. They were in the car with Boos before the shooting, and they claimed to have saw the confrontation. They were both also intoxicated. They were both smoking marijuana on the night in question, and Williams was drinking. Also, they both avoided the police. They did not come forward. Rice did not speak with the police until after obtaining an attorney. Williams, he gave testimony that Perry, in fact, told him that he was a suspect of the murder. He said that he would do everything he could to avoid being charged with the murder. In addition, Vincent Beeman, he didn't testify at trial, but there's a notarized affidavit from him. He was also in the car. He, a notarized affidavit was attached to him, a motion for new trial, where he stated that Boos was not the shooter in this case. And just like Williams testified, Detective Ricky Perry threatened to charge Beeman with the murder if Beeman did not falsely accuse Boos of the crime. So all these witnesses who were all gathered by Detective Ricky Perry, who now has been determined by the State's Attorney's Office, the same office that prosecuted Boos, to be an incredible witness, all the evidence was gathered and the case was made against Boos by this corrupt police detective. A confession is one of the most powerful pieces of evidence the State can present to the jury. Again, the State in this case repeatedly emphasized the importance of the inculpatory statements that were presented. We believe that this warrants reversal of Jarvis Boos's petition.  We're just asking this case to get to the second stage of post-conviction proceedings, just so Jarvis Boos can be appointed an attorney who can conduct further investigation into his claims and allegations, perhaps amend his petition, and eventually get to an evidentiary hearing on this case. So, does the Court have any questions? I believe so. Thank you, Counsel. Thank you very much. Argument on behalf of the State. Good afternoon, Your Honors. Patrick Daly for the State. May it please the Court and Counsel. We're at the first stage post-conviction proceedings point. Obviously, this is the lowest threshold of the consideration of the post-conviction petition. And at this stage, the defendant's allegations are to be assumed to be true for purposes of evaluating the petition and whether it's frivolous and patent without merit. The petition, you only state the gist of the claim. So, the approach here, of course, is not to argue whether or not Detective Perry perjured himself. At this point, we have to assume that he did, because that's the allegation. But that doesn't necessarily mean inquiry. What we then have to ask is, is the fact that Detective Perry perjured himself, what we're going to assume perjured himself for purposes of the petition, sufficient to warrant moving the petition to the second stage? There are several considerations here that this Court, I would like this Court to take into account in deciding whether or not the circuit court erred in dismissing the defendant's petition. Number one, let's get one thing out of the way. It was something that was mentioned in the court's ruling, something the defendants argued. I'm not going to dispute, and I don't think we can reasonably dispute that the newspaper articles can constitute, you know, attachments to support the defendant's allegations. Defendants supply cases, I think, which appear to support that proposition, and I think it makes sense. How those play into this particular case, I'll discuss in a minute. But I do want to discuss the perjure testimony and its impact on proceedings after trial or after hearing, whatever the case may be. The case law has been clear that it's a denial of due process for a defendant when a witness perjures themselves, if it appears that that perjury had a reasonably likely effect on the jury's verdict of the result of the proceedings. In this case, Detective Perry did not testify directly at trial on the subject matter that that defendant alleged was perjured. He had made, as counsel accurately noted, a claim that defendants were spontaneous. He said, hey, you know, I did it. I'm on parole. I'm going to go back and talk some more. That's what Detective Perry said. The question here, then, is how does that play into the law as it relates to the effect on perjure testimonies in terms of the jury verdict and the ultimate result? We know it didn't have an effect in the sense of Perry's allegation of what he told them outside in the hallway. So the question then becomes, I think the defendant accurately hones in on this particular concept, did it have an effect on the court's ruling on the motion to suppress? The motion to suppress was mainly that the argument that the second statement should not come in because there was no video recording of the defendant's statements to Perry outside in the hallway. And, of course, there's a statute that requires murder defendants' interrogations to be recorded. The confession, as it's been called here, wasn't really much of a confession. It was a statement where the defendant made a comment to the effect of, I made a mistake. And so it wasn't, in fact, not only is that the only thing there, but although the jury didn't see this, he does state on the video much as he did at the hearing. I never told Ricky Perry that I shot anyone. So there wasn't any kind of change in the defendant's attitude on this. So that being the case, I'm going to direct this court back to 2010. This court decided the case of People v. Boots in 5-08-0283. Two of the justices of that decision are here with us today. Justice Goldenberg and Welch. And in that case, one of the arguments the defendant had made was that the witnesses were so incredible that the conviction of guilt should not stand. Just to briefly quote this court's statement on page 10 of the decision, as we have discussed, the evidence of this case was not closely balanced. On page 11, the court states that, as noted previously, the state presented strong evidence of the defendant's guilt, including eyewitness testimony from three witnesses who knew the defendant before the crime. And the reason I bring this up is twofold. Number one, the argument is that, obviously, when you look at this court's comments, they related most particularly towards the witness's testimony. And the fact that the confession, as we're calling it, is really nothing more than kind of blurting out, you know, I made a mistake. There was significant evidence of the defendant's guilt, and all the defendants now are attempting to sort of retry that particular issue here. Really, this is kind of law of the case. This court's already made a ruling that there's strong evidence, and it was not closely balanced. So there's no real reason to like it if we take the concept of the perfect testimony as excluding the second confession, because that's the defendant's argument. If Judge Barry Pacific had known that this was, you know, about Ricky Perry's history, he would have excluded that second statement. It wouldn't have made a difference in this case. So the second thing I want to point out is that when you look at the newspaper articles here, there's one instance of the defendant, excuse me, of former Detective Perry perjuring himself. And we're not going to contest that, nor are we going to contest the fact that he was just not a good cop. He wasn't. He had a lot of problems, but there's only one instance involving the perjury. A lot of the other articles, as you look at them, relate to things that have to do with alcohol issues and being passed down to squad car, things of that nature. Now, I think there's a couple of things that are important to note in this regard. Number one, this allegation of perjury occurred in a case completely outside the context of this precedent. Number two, it occurred in a case that occurred years after the prosecution in this case. And number three, when you look at the defendant's cases, you will note that when they talk about these newspaper articles, they deal with sort of almost a systematic perjury situation where numerous cases were subjected to perjure testimonies, which is part of almost a canine plot by police investigators to falsely implicate defendants and provide perjury testimony in support of their cases at trial. So what we have here is an isolated incident that occurred years after the fact. And I think the argument to be made here is that simply the assertion of perjury that is sort of highly attenuated from the circumstances of this case cannot on its own stand actually kind of gather a constitutional claim of a violation. The third thing that I would note, and I'm kind of going in reverse order here, is that when you consider the statements that the defendant made and the statements that Detective Perry made, at the suppression hearing, the defendant testified that, you know, he did invoke his right to counsel. He stopped the interrogation. They were walking out. Detective Perry was kind of talking to them as they were walking out. You know, man, you can help yourself out here, that kind of thing. And the defendant testified that he kind of felt bad for Detective Perry. He went back in and volunteered to speak some more. When you look at the recording of the second interview or interrogation, he has gone through and asked explicitly numerous times, are you doing this at your own court? Are you doing this at your own free will? Et cetera, et cetera. I think when you look at the combination of those factual circumstances that the court could reasonably ascertain that even if I know at the time that Detective Perry was just a liar and unworthy of anything, the defendant's own statements seem to establish the fact that the second statement was given voluntarily and was not subject to coercion. So there are three ways in which this court could approach this, or a combination of which I think would provide the support for this court to affirm the circuit court in its de novo review of this dismissed post-conviction petition. Does the court have any questions? I appreciate this. Thank you. I'll be biomarking. As to the state's points, first, as to whether or not this was a voluntarily given statement, that's just a misstatement of the law. The only issue here is whether or not Detective Perry scrupulously honored the invocation of the right to silence.  So clearly he didn't, and counsel agrees that for purposes of this stage of proceedings, you have to assume he did perjure himself. The only question is, did he stop and cut off questioning? Obviously he didn't. So the statements had to be suppressed on that basis alone. You don't look to whether or not he freely and voluntarily gave the second statement. That exact argument was rejected by our Supreme Court in RC, which is obviously cited in our reply brief. As to whether or not this is just one instance, that reasoning is undercut by our comments by the state's attorney, Robert Hayden. If this was just one isolated instance, this would not just be necessary to review every case involved, as the state's attorney said was necessary. Furthermore, there's no support in the law that only just you have to have one or two or three or any specific number of instances before you can raise this sort of claim that just makes no sense, because what would Booth need to do? Just sit around and wait until more allegations surface before he can support his petition? Booth right now has supported his petition, and he has his own instance of misconduct. Again, we're just asking for the court to appoint an attorney at this stage. And maybe the attorney would then be able to dig up some more instances of misconduct that have become public. Finally, as to whether or not this is not much of a confession, that stands in contrast to how the state presented these statements at trial. They emphasized to the jury that the statements he made, I made a mistake, indicated that he was the shooter, that he was guilty of shooting Daryl Bird. So we are at the first stage of post-conviction proceedings. He was at least arguably prejudiced by the introduction of these statements, particularly in the light that the state presented the comments. And again, while this court previously reviewed the evidence in this case and noted the evidence was closely balanced, that included the improperly admitted statement. And we can't ignore here that the jury indicated they were deadlocked. They were hesitant to convict, but it was based on the evidence presented, including the statement. Take that out. It's at least arguable that the outcome of this trial would have been different without the statement. Thank you, counsel. Thank you very much. We'll take this case under advisement and issue a written ruling.